## WHARTON vs. LITTLEFIELD.

[TRESPASS TO TRY TITLES TO LAND.]

1. *Subdivisions of fractional section of public land.*—Where a fractional section has been subdivided under the act of congress of April 5, 1832, (Public Land Laws, vol. 4, 493,) and the rules and regulations prescribed in conformity therewith by the secretary of the treasury, (*Ib.* vol. 2, 933,) a deficiency in the contents of the section must, as between a quarter-quarter section and a residuary fraction, fall entirely on the latter, and cannot be apportioned between them.

2. *Erroneous charge too favorable to appellant.*—An erroneous affirmative charge, which, when construed with reference to the evidence, is too favorable to the appellant, constitutes no ground of reversal in his favor.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. THOMAS A. WALKER.

THIS action was brought by Wilson Littlefield against Benjamin B. Wharton, to try titles to a small tract of land embraced in fractional section 18, township 12, range 6, east, in the Coosa land district, and to recover damages for its detention. The plaintiff claimed the field in controversy as a part of subdivision 8 of said section, to which he showed title; while the defendant, who was one of the executors of William Wharton, deceased, as well as one of his heirs and devisees, claimed it under a patent to his said ancestor for subdivision 7 of said section. The evidence respecting the location of the land, as set out in the bill of exceptions, is as follows:

"The defendant offered proof, also, tending to show that said fractional section 18, which included the land in controversy, was on the north and eastern side of Wills' creek in said county, and was bounded by said creek; that the map of said fractional section, made by the original United States surveyor, and returned to the general land-office, represented nine fractions, numbered from 1 to 9 inclusive, variant in size, as being contained in said section; that number 7 was represented on said map as being bounded south by Wills' creek, and containing 45 acres; that

number 8 was represented as being a square piece of land, directly north of, and adjoining to fraction 7, not touching the creek, and containing 39 75-100 acres; that the boundary between the United States and the Cherokee territory, established by the treaty of 1816, ran down the east bank of said creek; that there was just 45 acres north of said creek, upon an actual survey, up to the north line of fraction 8, between the east and west boundaries of 7 and 8; that if fraction 8 was run out, in a square form, to include 39 75-100 acres, it would run across the main prong of said creek; that this would leave but about 10 acres north of said creek in fraction 7, while fraction 8 would include some five acres south of said creek; that immediately opposite the land in controversy, there was an island in said creek, containing 35 acres, formed by what some of the witnesses called a slough, and others a prong of the creek, which left the main creek just at the head of the island, at the upper corner of the land marked fraction 7 on the map, and emptied into the creek at the lower corner of said land, leaving said island between it and the main creek.

"There was evidence, also, tending to show that this slough was about one-half the width of the main creek; that the water ran in it all the year, although one summer it became nearly dry; and that the north prong was always recognized as Wills' creek proper. There was proof, also, tending to show that the United States surveyors, in running the line between the United States territory in St. Clair county and the Cherokee territory, in 1817, ran on the south bank of Wills' creek, and on the south prong of said creek at the island aforesaid, leaving said island outside of the lands then surveyed; that a line run according to the field-notes of the meanders of said creek made by the said surveyors, run some distance south of the aforesaid slough, at the point opposite the land in controversy; that the said line crossed the creek higher up; and that the meanders of the south bank of the south prong more nearly corresponded with the line established by said field-notes, than the meanders of the north prong. The proof tended to

show, also, that the lands lying on the south side of the line surveyed as aforesaid, in 1817, were embraced in the Huntsville land district; and that the fractional section in said district, directly south of the section embracing the land in controversy, was known as fractional section 18."

The court charged the jury, in reference to this evidence, as follows:

"In all Government surveys, the section lines and corners are established by the United States surveyors. The marked lines of all sections, and the corners of all sections set up, are the correct boundaries and corners, and, when ascertained, cannot be changed by any other surveyor. The United States Government has arranged their boundaries, marked their lines and corners, and declared their contents; and the purchaser of an entire section takes all the land within those limits, be it more or less than the quantity returned by the surveyor. But in the purchase of a less quantity than a section, as between the several holders of a section, the contents of such several parts must be determined by reference to the entire section; and the purchaser of a half or quarter section is entitled to one half or one fourth of whatever the section contains. The same rule of law is applicable to fractional sections; the several purchasers thereof being entitled to a *pro-rata* quantity of such fractional section, to be ascertained in the same way as if they were the purchasers of a regular section. Each section, or subdivision of a section, is independent of any other section in the township, and must be governed by its marked and established boundaries.

"According to the treaty of 1816, between the United States and the Creek tribe of Indians, the east bank of Wills' creek is the boundary line between the United States and the Indians. The original survey of the lands of Cherokee county, made by the United States subject to entry and sale at Lebanon, commences at Wills' creek proper; and for the purpose of making out the number of acres to which the plaintiff and defendant are respectively entitled according to their receipt or patent, they have no right to cross the creek, and take part of the section on

the south side of it, heretofore subject to entry and sale at Huntsville.

"On the part of the defense it is insisted, that the oat-field, upon which the trespass is alleged to have been committed, is in fraction 7, and not in fraction 8; and defendant claims title to said fraction 7 under his deceased ancestor, William Wharton, in whom he shows title under a patent. Whether said field is in fraction 7, or in fraction 8, the jury must determine from the proof. If it is in fraction 8, the plaintiff may recover; if in fraction 7, he cannot recover. If the jury believe from the proof that fractional section 18, in which both of said fractions are included, have not the number of acres, north and east of Wills' creek, reported to the land-office by the United States surveyors, and that all the fractions in said section have been purchased from the United States, those purchasers who claim subdivisions of the section have not the right to claim and recover the full number of acres sold to them respectively, to the exclusion and loss of other purchasers; but can only recover their *pro-rata* share."

The defendant excepted to this charge, and he now assigns it as error.

JAS. B. MARTIN, for appellant.

ALEX. WHITE, and D. W. BAINE, *contra.*

RICE, C. J.—By the act of congress, entitled "an act supplementary to the several laws for the sale of the public lands," approved April 5th, 1832, it is provided, that "all public lands of the United States, when offered at private sale, may be purchased, at the option of the purchaser, either in entire sections, half sections, quarter sections, half-quarter sections, or quarter-quarter sections; and in every case of a division of a half-quarter section, the line for the division thereof shall run east and west, and the corners and contents of quarter-quarter sections, which may thereafter be sold, shall be ascertained, as nearly as may be, in the manner and on the principles directed and prescribed by the second section of an

act entitled an act concerning the mode of surveying the public lands of the United States, passed on the eleventh day of February, 1805; and fractional sections, containing fewer or more than one hundred and sixty acres, shall, in like manner, as nearly as may be practicable, be sub-divided into quarter-quarter sections, under such rules and regulations as may be prescribed by the secretary of the treasury."—See 1st volume Public Land Laws, 493; 4th U. S. Statutes at large, 503.

The rules and regulations prescribed by the secretary of the treasury, under the aforesaid act of 1832, among other things, contain the following directions to the surveyors general, to-wit: "In all cases where the quantity of the fractional section, or the portion thereof remaining unsold, and liable to be divided under the act of 5th April, 1832, admits of the sale of one or more quarter sections, you [the surveyors general] will subdivide such quarter sections into *quarter-quarter sections*, and they will be described by the registers as quarter-quarter sections; and in describing the *residuary lots or portions* of such fraction, due reference must be had to the mode adopted in describing the portion of the fraction which has been sold. For instance, where the portion of the fraction heretofore sold has been described as a lot bearing a special number, the residuary fractions will have to be described as lots bearing numbers in a · series consecutive to that commenced by the former subdivision." * * "Fractional sections containing less than one hundred and sixty acres, or the residuary portion of a fractional section, *after the subdivision into as many quarter-quarter sections as it is susceptible of*, may be subdivided into lots, each containing the quantity of a quarter-quarter section, as nearly as practicable, by so laying down the line of subdivision as that they shall be twenty chains wide; which distances are to be marked on the plat of subdivision, as are also the areas of *the quarter-quarters* and *residuary fractions*."—Public Land Laws, vol. 2, 933.

Fractional section 18, of township 12, range 6, east, in the Coosa land district, was subdivided according to the aforesaid act of 1832, and the aforesaid rules and regula-

17

tions.   On the official plat of its subdivision, subdivision
7 was represented as being bounded on the south by one
of the boundaries of the section, and as containing 45
acres; subdivision 8 was represented as being a square
piece of land, lying directly north of, and adjoining sub-
division 7, and as containing 39 75-100 acres, and as not
touching any boundary of the section.   Subdivision 8 is
"a quarter-quarter section"; subdivision 7 is "a residuary
fraction."   The title to subdivision 7 is in the heirs or devi-
sees of William Wharton; and the defendant is one of the
children and devisees of said William, and one of the
executors of his will.   The plaintiff is the owner of sub-
division 8, and sues as well to try titles to it, as to recover
damages for a trespass which he alleges was committed
upon it by the defendant.   The plaintiff concedes, that
unless the oat field mentioned by the witnesses is part of
it, no trespass has been committed upon it; but he alleges
that the oat field is part of it.   The defendant denies this
allegation, and avers that the oat field is part of subdivi-
sion 7.   The main controversy is, whether that field is part
of subdivision 8, or part of subdivision 7; and that con-
troversy turns upon the question, whether, in case a
fractional section, which has been subdivided under the
aforesaid act of 1832, and the aforesaid rules and regula-
tions, does not contain the aggregate number of acres
which the plat of subdivision represents its subdivisions
to contain, the deficiency is to be apportioned between a
quarter-quarter section and a residuary fraction.

All our decisions agree, that the *external* lines of sections,
as actually run and marked by the government surveyor,
are the true and established lines; that the corners of
sections, as marked by him, are the true and established
corners; and that these lines and corners cannot be
changed.   The cases of Walters v. Commons, 2 Porter,
38, and Nolen v. Parmer, 24 Ala. 391, hold, that the
corners of *subdivisions* of sections are not, like the corners
of sections, declared by law to be established "as the
proper corners," but are to be placed "as nearly equi-
distant as possible from the corners of the section"; and
that, if a mistake is made in that particular, the mistake

Wharton v. Littlefield.

can be corrected. And in the case last mentioned, it was decided, that such a mistake by the government surveyor, in locating the half-mile stake on the eastern line of a *fractional* section, should be corrected by changing it to a point equi-distant from the section corners on the same line. But not one of the cases decides the question above stated by us,—the most important question in the case at bar. And in the absence of any direct decision of that question, we shall follow what seems to us the obvious common-sense meaning of the language employed in the aforesaid act of 1832, and in the rules and regulations thereunder prescribed; and hold, that as between a *quarter-quarter section*, of a fractional section subdivided under said act and rules and regulations, and a *"residuary fraction"* of the same section, a deficiency in the contents of the section constitutes no ground for apportionment, nor for reducing the area of the quarter-quarter section, as marked on the plat of subdivision.

Upon the question above considered and decided by us, the charge of the court, construed in connection with the evidence, is in substance as follows : that the contents of subdivision 8 were to be ascertained and determined according to the contents and legal subdivisions of the entire fractional section ; and that if the section contained less than the plat of subdivision represented its subdivisions to contain, and all the subdivisions had been purchased, the purchaser or owner of a quarter-quarter section did not have the right to recover the full number of acres marked on it in the plat of subdivision, and sold to him by the government, to the exclusion and loss of the purchaser or owner of a "residuary fraction" ; but his right, in such case, was restricted to a recovery of "his *pro-rata* share." There is error in that charge ; and for that error, the plaintiff would have been entitled to a reversal, if the verdict and judgment had been rendered against him. But that error does not entitle the defendant to a reversal, because, under the undisputed facts of the case, it was in his favor, and could not have injured him. There was no evidence, or pretense, that the fractional section contained more than the plat of subdivision represented its

subdivisions to contain. The charge of the court did not allow the plaintiff to recover any land outside of the boundaries of his quarter-quarter section, as indicated by the government survey and plat of subdivision; nor did it allow him to recover for any trespass which was not committed within those limits. But it diminished the plaintiff's chances for a verdict, and increased those of the defendant, by making it essential to a recovery by the plaintiff, that he should not only prove that the oat field in controversy was within the boundaries of his quarter-quarter section, as designated by the government survey and plat of subdivision, but should also prove that the said field was within the limits to which his quarter-quarter section might be reduced by subjecting it to an apportionment of the deficiency of the contents of the entire section. There is nothing in that charge, nor in any of the other charges, which entitles the defendant to a reversal of the judgment.

If any portion of the charge, when construed in connection with the evidence, could with any reason be understood or construed as asserting that the plaintiff could recover any land outside of the boundaries of his quarter-quarter section, as designated by the government survey and official plat of subdivision, or for any trespass committed beyond those limits, the case would then be very different from that now presented. But as no portion of the charge could with any reason be so understood or construed, and as the plaintiff is clearly entitled to recover of *this defendant* any land in his possession which is within the boundaries of the plaintiff's quarter-quarter section, as indicated by the government survey and official plat of subdivision, we think it clear that no injury has been done to the defendant by any portion of the charge.

We have carefully examined the several exceptions and assignments of error which are not disposed of by the foregoing part of this opinion, and we think it too clear for argument that there is nothing in those exceptions and assignments of error. The rulings of the court embraced by them are manifestly correct.

The judgment is affirmed; WALKER, J., not sitting.